X FILED ___ LODGED
___ RECEIVED ___ COPY

OCT 1 9 2000

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA (PHOENIX)

| | | |
|---|---|---|
| ARIZONA CENTER FOR DISABILITY LAW, | ) ) | |
| Plaintiff, | ) ) | CIV 99-107-PHX-EHC (OMP) |
| v. | ) ) | |
| JAMES R. ALLEN, M.D., et al., | ) ) | **OPINION** |
| Defendants. | ) | |

JULIANNE CARTER
ELLEN SUE KATZ
ANNE RONAN
ARIZONA CENTER FOR DISABILITY LAW
3839 n. Third Street, Suite 209
Phoenix, AZ 85012

　　Attorneys for Plaintiff

CATHERINE M. DODD
Assistant Attorney General
Administrative Law Section
1275 West Washington Street
Phoenix, AZ 85007

　　Attorneys for Defendants

/ / /

/ / /

1 - OPINION

**PANNER, J.**

Plaintiff, the Arizona Center for Disability Law, filed this action against defendants, seeking injunctive and declaratory relief under 42 U.S.C. § 1983 for defendants' alleged violations of the Developmental Disabilities Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6041 et seq.; the Protection and Advocacy for Persons with Mental Illness Act of 1986, as amended by 42 U.S.C. § 10801 et seq.; and the Protection and Advocacy of Individual Rights Program of the Rehabilitation Act of 1973, 29 U.S.C. § 794e. The parties have filed cross motions for summary judgment. For the reasons discussed below, I grant in part and deny in part plaintiff's motion for summary judgment, and I deny defendants' motion for summary judgment.

FACTUAL BACKGROUND

Plaintiff, the Arizona Center for Disability Law, is a nonprofit corporation authorized by Congress to protect and advocate for the civil rights of persons with disabilities in Arizona. Plaintiff is the designated Protection and Advocacy (P&A) System in the state of Arizona.

Defendant Dr. James Allen is the director of the Arizona Department of Health Services (ADHS), which is charged with the administration, delivery and monitoring of state and federally funded behavioral health services to eligible individuals. The director of ADHS is responsible for compliance with all

2 - ORDER

applicable state and federal laws. Defendant Ronald Smith is the assistant director of the Division of Behavioral Health Services (DBHS) of the ADHS. The DBHS is responsible for the administration, delivery and monitoring of state and federally funded behavioral health services. The assistant director of DBHS is responsible for compliance with all applicable state and federal laws. DBHS contracts with Regional Behavioral Health Authorities (RBHAs). The RBHAs then contract with local providers for the delivery of mental health services to eligible individuals.

More than 200 people a year died while receiving behavioral health services between 1996 and 1998. A high percentage of those people committed suicide, died of a drug overdose, or the cause of death is unexplained or unknown. Plaintiff monitors the treatment and care of people receiving behavioral health services from the state in part through the mortality reports prepared by the service providers when an individual dies in their care. Since January 1996, DBHS sends those mortality reports to plaintiff on a quarterly basis, even though the reports are due to the DBHS within 20 days of a person's death. Consequently, in numerous cases, plaintiff does not receive a mortality report until several months after a death. The mortality reports provided to plaintiff have the names and addresses redacted.

/ / /

3 - ORDER

Plaintiff's staff reviews the mortality reports to monitor the care and treatment people have received; to assess the coordination of care between the behavioral health system and the primary care physician; to determine whether required services were provided; and to determine whether crisis services were provided, and if appropriate, medication was provided. Plaintiff's experienced staff also reviews the mortality reports to determine whether probable cause exists to believe abuse and neglect may have occurred. After reviewing the mortality reports and making a probable cause determination, plaintiff requests that DBHS investigate some of the mortalities, and plaintiff's staff seeks to investigate the other mortalities by requesting the records for those mortalities.

In March 1998, plaintiff determined probable cause existed to believe that abuse or neglect occurred in 19 deaths, and it requested unredacted mortality reports and other records for those 19 deaths. Three months later, defendants provided unredacted mortality reports for six of the 19 deaths. With regard to the other deaths, defendants disagreed that probable cause existed and denied plaintiff access to records.

Prior to filing this lawsuit, the parties attempted to resolve their dispute over those other records. On January 22, 1999, plaintiff filed this lawsuit. In response to plaintiff's first set of interrogatories in this case, defendants reevaluated

4 - ORDER

plaintiff's requests for records and abandoned most of its objections. On August 11, 1999, defendants provided 10 additional unredacted mortality reports. However, defendants still have not provided plaintiff with three of the requested unredacted mortality reports because defendants disagree that probable cause exists in each of those three cases.

Plaintiff alleges that defendants violated the P&A laws by (1) failing to promptly provide plaintiff with the redacted mortality reports; and (2) failing to respond promptly to plaintiff's requests for access to records upon plaintiff's determination of probable cause. In addition to a declaration that defendants violated the P&A laws, plaintiff seeks an order from this court that requires defendants to provide redacted mortality reports within 30 days of an individual's death and that requires defendants to provide unredacted mortality reports and other records in defendant's possession within five days of plaintiff's determination of probable cause and request for access. Plaintiff moves for summary judgment on its claims, arguing that no factual dispute exists and that it is entitled to judgment as a matter of law. Defendants have also moved for summary judgment, arguing that they are permitted to "second-guess" plaintiff's determination of probable cause and withhold information when they determine that no probable cause exists. Alternatively, defendants contend that a factual issue exists

5 - ORDER

1 regarding the promptness of access to records afforded to
2 plaintiff and the reasonableness of the time lines requested by
3 plaintiff for access to records.

4                              STANDARDS

5      The court should grant summary judgment if there are no
6 genuine issues of material fact and the moving party is entitled
7 to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the
8 moving party shows that there are no genuine issues of material
9 fact, the nonmoving party must go beyond the pleadings and
10 designate facts showing an issue for trial.  Celotex Corp. v.
11 Catrett, 477 U.S. 317, 322-23 (1986).  A scintilla of evidence,
12 or evidence that is merely colorable or not significantly
13 probative, does not present a genuine issue of material fact.
14 United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539,
15 1542 (9th Cir.), cert. denied, 493 U.S. 809 (1989).

16      The substantive law governing a claim determines whether a
17 fact is material.  T.W. Elec. Serv. v. Pacific Elec. Contractors
18 Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The court should
19 resolve reasonable doubts about the existence of a material
20 factual issue against the moving party.  Id. at 631.  The court
21 should view inferences drawn from the facts in the light most
22 favorable to the nonmoving party.  Id. at 630-31.
23 / / /
24 / / /
25

26 6 - ORDER

DISCUSSION

Congress enacted the Developmental Disabilities Assistance and Bill of Rights Act (DDA), codified as amended at 42 U.S.C. §§ 6000-6083, in response to the inhumane and despicable condition in which persons with developmental disabilities were living. With DDA, the federal government instituted a grant program to distribute federal funds to assist states in providing services to people with developmental disabilities. 42 U.S.C. § 6025. In return, the DDA requires each state to establish a Protection and Advocacy (P&A) system that is authorized to investigate reports of abuse and neglect of people with developmental disabilities, to remedy rights violations, and to provide other advocacy services. 42 U.S.C. § 6042. In 1986, these protections were extended to people with mental illness under the Protection and Advocacy of Mentally Ill Individuals Act (PAMII) of 1986, codified as amended at 42 U.S.C. §§ 10801-10851, and to people with disabilities generally under the Protection and Advocacy of Individuals Rights (PAIR) Program, codified as amended at 29 U.S.C. § 794e.

Through these Acts, Congress empowered P&A systems to investigate and pursue legal action on behalf of abuse and neglect victims. 42 U.S.C. § 6042(a)(2); 42 U.S.C. § 10805(a)(1); 29 U.S.C. § 794e(f)(3). Congress also authorized P&A access to records to enable their ability to protect and

7 - ORDER

advocate for persons with physical, developmental and mental disabilities. 42 U.S.C. § 6042(a)(2)(I); 42 U.S.C. § 10805(a)(4); 29 U.S.C. § 794e(f)(2). The Acts each authorize P&A access to all records of:

> (ii) any individual with [covered] disabilities--
>
> (I) who, by reason of such individual's mental or physical condition, is unable to authorize the system to have such access;
>
> (II) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
>
> (III) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities there is probable cause to believe that such individual has been subject to abuse or neglect.

42 U.S.C. § 6042(a)(2)(I)(ii); see also 42 U.S.C. § 10805(a)(4)(B) (same); 29 U.S.C. § 794e(f)(2) (general authorization to access records as set forth in 42 U.S.C. § 6041 et seq.); 42 C.F.R. § 51.41(b)(2) (same); 45 C.F.R. § 1386.22(a)(2) (same). A P&A must maintain the confidentiality of the records to the same extent as the provider of services. 42 U.S.C. § 10806(a).

1. Probable Cause Determination

Defendants have denied plaintiff access to records of certain individuals covered by the P&A laws because defendants disagree with plaintiff's determination that probable cause exists to believe that those individuals have been subject to

8 - ORDER

abuse or neglect. Plaintiff contends that defendants may not second-guess its determination of probable cause and thereby deny plaintiffs' access to records.

The legal question of who is the final arbiter of probable cause under the P&A laws is an issue of first impression. To resolve this question of statutory interpretation, the court must "look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy." AT&T Corp. v. City of Portland, 216 F.3d 871, 876 (9th Cir. 2000) (quoting United States v. Mohrbacher, 182 F.3d 1041, 1048 (9th Cir. 1999)).

When an individual with disabilities has died while receiving state services,[1] a P&A has authority to access all records when the P&A determines probable cause exists. See 42 U.S.C. § 6042(a)(2)(I)(ii); 42 U.S.C. § 10805(a)(4)(B). The regulations promulgated by the U.S. Department of Health and Human Services specifically contemplate that the P&A will make the determination of whether probable cause exists. See 42 C.F.R. § 51.41(b)(iii) ("the P&A system has determined that there is probable cause to believe that the individual has been or may be subject to abuse or neglect"); 45 C.F.R. § 1386.22(a)(2)(iii) ("the system has probable cause . . . to believe that such

---

[1]When a person dies, any legal guardianship terminates. ARS § 14-5306.

9 - ORDER

individual has been subject to abuse or neglect"); see also 42 C.F.R. § 51.31(g) (P&A system may determine probable cause from monitoring and other activities). Neither the P&A laws nor the regulations promulgated thereunder contemplate that the state or a service provider will reevaluate the P&A's determination of probable cause and deny access to the P&A because the state or service provider disagrees that probable cause exists.

Defendants are correct that the regulations contemplate that access to records may be delayed or denied. Specifically, those regulations require that "[a]ccess to facilities, records or residents shall not be delayed or denied without the prompt provision of written statements of the reasons for the denial." 42 C.F.R. § 51.43; see also 45 C.F.R. § 1386.22(i) (same). However, the plain language of those regulations, when construed with the entire P&A statutory and regulatory scheme and its objectives and policies, does not support defendants' contention that the state or the provider of services is the final arbiter of the probable cause determination. Rather, the P&A laws and the regulations promulgated thereunder support the conclusion that a P&A is the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect. To conclude otherwise would frustrate the purpose of the P&A laws to establish an effective system to protect and advocate for the

10 - ORDER

rights of individuals with disabilities. Without access to records, a P&A system is unable to accomplish its congressional mandate to investigate incidents of abuse and neglect when the P&A has probable cause to believe that such incidents have occurred.

Accordingly, defendants are not the final arbiter of whether probable cause exists, and defendants may not deny plaintiff's request for access to records on the basis that defendants disagree with plaintiff's probable cause determination. Plaintiff is entitled to summary judgment on this question of law.

2. Prompt Access

Plaintiff also contends that defendants have violated the P&A laws by failing to promptly provide plaintiff access to records. Defendants concede, and the court agrees, that defendants did not promptly provide plaintiff access to some of the records requested. Moreover, defendants have still not completely satisfied plaintiff's requests for records. In addition to a declaration that defendants have violated the P&A laws, plaintiff requests that this court establish time lines by which defendants, in the future, must provide access to records upon plaintiff's determination of probable cause and request for records. Defendants contend that the requested time lines are not reasonable and that any determination regarding the

11 - ORDER

promptness of defendants' response to plaintiff's requests for records is a fact-bound inquiry that cannot be resolved on plaintiff's summary judgment motion.

Whether defendants promptly provided access to all requested records and whether the time lines requested by plaintiff are appropriate are fact-bound inquiries that cannot be resolved on the record before the court on these summary judgment motions.

## CONCLUSION

Plaintiff's motion for summary judgment (# 21-1) is granted in part and denied in part. Defendants' motion for summary judgment (# 49-1) is denied.

DATED this 11 day of October, 2000.

OWEN M. PANNER
U.S. DISTRICT COURT JUDGE

12 - ORDER